SIGNED THIS: October 18, 2012

_____
**Thomas L. Perkins
United States Chief Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE:                                                    )<br>                                                              )<br>CENTRAL ILLINOIS ENERGY             )   No.  09-81409<br>COOPERATIVE,                                 )<br>                              Debtor.          )<br>                                                              )<br>                                                              )<br>A. CLAY COX, not individually but as     )<br>Trustee for the estate of Central Illinois   )<br>Energy Cooperative,                            )<br>                              Plaintiff,        )<br>                                                              )<br>    vs.                                                   )   Adv. No.  11-8034<br>                                                              )<br>RIDGESTONE BANK, a Wisconsin banking )<br>corporation,                                        )<br>                              Defendant.    )| |

### OPINION

This matter is before the Court on the Motion for Summary Judgment filed by the Defendant, Ridgestone Bank (Ridgestone). For the reasons explained herein, the Motion will be granted.

## BACKGROUND

The Debtor, Central Illinois Energy Cooperative (Debtor), an Illinois agricultural cooperative comprised of Central Illinois farmers, was formed in 2001, for the purpose of constructing, owning and operating a grain handling facility and administration building. The Debtor owned a controlling interest in Central Illinois Holding Company, LLC, the holding company for Central Illinois Energy, LLC (CIE), an entity formed in March, 2004, for the purpose of constructing, owning and operating an ethanol production facility and waste-coal fired power generating plant. The grain handling facility being constructed by the Debtor was located adjacent to the ethanol plant being constructed by CIE. The farmers who were members of the Debtor, hoped to sell corn to CIE for processing into ethanol and other byproducts.

The two construction projects, separately financed, were both in serious financial trouble by June, 2007. As a solution to its problems, the Debtor sought the assistance of Green Lion Bio-Fuels, LLC (Green Lion). On or about June 12, 2007, pursuant to a written Purchase Agreement, the Debtor transferred substantially all of its assets, including the grain handling facility in its not-yet-completed state, to Green Lion. Ridgestone provided the financing to Green Lion to enable it to close the purchase. The material terms of the Purchase Agreement are discussed in detail below. Notwithstanding the sale, the Debtor agreed to "proceed with and be fully responsible for the administration of the construction of the administration building and grain handling facility."

The entire project failed within six months thereafter. CIE filed a voluntary petition

under chapter 11 on December 13, 2007, converting to chapter 7 on August 4, 2008. An involuntary chapter 11 petition was filed against the Debtor on May 1, 2009, followed by conversion to chapter 7 on July 16, 2009.

## SUMMARY OF THE COMPLAINT AND ANSWER

The chapter 7 Trustee, A. Clay Cox (Trustee) seeks to avoid as constructively fraudulent a prepetition transfer to Ridgestone of $42,500 paid as a loan fee in connection with its financing to Green Lion, on the theory that the funds were property of the Debtor transferred to Ridgestone to pay a liability of Green Lion, for which the Debtor did not receive reasonably equivalent value.[1] The cause of action is pleaded, alternatively under section 548(a) of the Bankruptcy Code and under sections 5 and 6 of the Uniform Fraudulent Transfer Act. In its Answer, Ridgestone admits the basic facts of the transaction, but avers that the $42,500 payment was made with funds of Green Lion, not the Debtor, that the funds were not property of the Debtor, and that the transfer did not diminish the Debtor's estate.

## FINDINGS OF FACT

1. Pursuant to the Purchase Agreement, the Debtor sold substantially all of its assets to Green Lion.

2. The purchase and sale closed on or about June 13, 2007.

3. Under the Purchase Agreement, the gross purchase price for the Debtor's assets was stated to be $7,750,000.

4. Debtor agreed to accept, and Green Lion agreed to pay, $3,739,499.88 in cash at closing, with the remaining balance paid by Green Lion's assumption of

---

[1] As a general rule, a fraudulent transfer occurs when a debtor pays the debt of another, when the debtor itself is not obligated on the debt. *In re Richards & Conover Steel Co.*, 267 B.R. 602, 613 (8th Cir.BAP 2001). The Trustee does not contend generally that the Debtor received less than reasonably equivalent value in exchange for the sale of its assets to Green Lion. Rather, the Trustee's complaint specifically targets the payment to Ridgestone as having been made from property of the Debtor.

3

certain obligations and the subsequent exchange of either membership interests or an unsecured promissory note.

5. The Purchase Agreement provided for numerous adjustments to the cash portion of the purchase price, referred to as Closing Credits.

6. The Purchase Agreement provides that in addition to usual and customary adjustments at closing, Green Lion shall be entitled to a credit against cash due at closing of $125,000 for a loan commitment fee, $50,000 for its independent attorney fees and costs, and $100,000 as a loan guaranty fee.

7. Ridgestone was not a party to the Purchase Agreement.

8. Ridgestone and Green Lion entered into a Construction Term Loan Agreement dated June 13, 2007, evidencing a loan of $4,250,000.

9. The Debtor was not a party to the Construction Term Loan Agreement.

10. The Construction Term Loan Agreement defines "Loan Origination Fee" to mean "the $42,500.00 fee due from Borrower to Bank upon execution of this Loan Agreement."

11. $42,500 is 1% of $4,250,000.

12. Under the Construction Term Loan Agreement, one of the several conditions precedent to Ridgestone's obligation to advance funds is the receipt by Ridgestone of the Loan Origination Fee.

13. Attached to the Complaint is a copy of the Settlement Statement reflecting the joint closing of the purchase and sale transaction between the Debtor and Green Lion and the loan transaction between Green Lion and Ridgestone.

14. On June 13, 2007, Ridgestone's loan to Green Lion closed and funds totaling $3,739,499.88 were disbursed, paid and credited as reflected on the Settlement Statement.

15. The Settlement Statement reflects the loan from Ridgestone in the amount of $4,250,000 with disbursements at closing totaling $3,739,499.88.

16. The closing disbursements included payments of $2,178.356.16 to Whitebox CIE Holdings, Inc., and $1,236,857.33 to Nostaw, a contractor, for its "current pay request."

17. The closing disbursements included payments of $48,190.50 to attorneys, the

4

        title insurance company, the construction manager, the Illinois and Delaware Secretaries of State, and the Fulton County Recorder's Office.

18. The closing disbursements also included the allocation of certain amounts credited to obligations of Green Lion, as follows:

Green Lion Bio-Fuels, LLC (Purchaser)

| | |
|---|---:|
| Loan Commitment Fee | $ 67,455.39 |
| Ridgestone Bank | 42,500.00 |
| Liebman Conway | 12,849.00 |
| Liebman Conway Local Counsel | 3,291.50 |
| Independent Attorneys' Fees and Costs | 50,000.00 |
| Loan Guaranty Fee | 100,000.00 |
| | $276,095.89 |

19. Of the $3,739,499.88 allocated on the Settlement Statement, Ridgestone wire transferred only $3,463,403.99 to the title company to pay the required third-party disbursements at closing.

20. The remainder of the loan proceeds totaling $276,095.89 was retained and disbursed by Ridgestone in satisfaction of Green Lion's contractual obligation to pay certain fees and costs, one of which was the Loan Origination Fee of $42,500.

21. The Loan Origination Fee was not paid by the Debtor.

22. The funds used to pay the Loan Origination Fee were never transferred to or in possession of the Debtor or the closing agent.

23. The funds used to pay the Loan Origination Fee originated with and never left possession of Ridgestone.

24. The $276,095.89 in fees and costs, including the $42,500 Loan Origination Fee, was treated as an advance made by Ridgestone to Green Lion and became part of the loan balance under the Construction Term Loan Agreement.

## SUMMARY JUDGMENT STANDARDS

Under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together

5

with any affidavits, show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the material facts are not in dispute, the sole issue is whether the moving party is entitled to judgment as a matter of law. *ANR Advance Transp. Co. v. International Broth. of Teamsters, Local 710,* 153 F.3d 774, 777 (7th Cir. 1998).

## **ANALYSIS**

The Trustee's theory of avoidance, pleaded as constructive fraud, requires him to prove that the funds he alleges were fraudulently transferred were property of the Debtor. Whether a debtor holds a property interest in property that is the subject of a prepetition transfer is determined by state law. *Barnhill v. Johnson,* 503 U.S. 393, 398, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992); *In re Atchison,* 925 F.2d 209, 210-11 (7th Cir. 1991). Under the undisputed facts before the Court, the Debtor did not have a property interest in the funds paid to Ridgestone.

The Trustee's primary argument focuses on the inclusion of the $42,500 fee as part of the $3,739,499.88 that the Purchase Agreement required, subject to adjustments, Green Lion to pay at closing, which itself was part of the stated purchase price of $7,750,000. He contends that the Debtor acquired a property interest in the entire pre-adjustment amount of $3,739,499.88, notwithstanding that the Purchase Agreement provides for a reduced amount to be paid at closing. Ridgestone disputes the alleged acquisition of a property interest by the Debtor, arguing that the terms of the Purchase Agreement rebut the

6

Trustee's contention. Ridgestone is correct.

The Debtor's rights vis-a-vis Green Lion are created and defined by the Purchase Agreement, which provides that it shall be governed and construed according to the laws of the State of Illinois. In construing a contract, it is the court's primary objective to ascertain and give effect to the intent of the parties that is expressed in the written agreement. *Addison Ins. Co. v. Fay*, 232 Ill.2d 446, 455, 905 N.E.2d 747 (2009). If the written agreement is unambiguous, then the court must construe the parties' intent from the writing itself as a matter of law and effectuate its plain and ordinary meaning. *Buenz v. Frontline Transp. Co.*, 227 Ill.2d 302, 308, 882 N.E.2d 525 (2008). A contract term or provision is considered ambiguous if, due to the indefiniteness of the language, it can be subject to multiple interpretations. *Clarendon America Ins. Co. v. Aargus Sec. Systems, Inc.*, 374 Ill.App.3d 591, 596, 870 N.E.2d 988 (Ill.App. 1 Dist. 2007). Whether a contract is ambiguous is a question of law for the court, and the mere fact that the parties disagree as to the meaning of a term does not make that term ambiguous. *William Blair & Co., LLC v. FI Liquidation Corp.*, 358 Ill.App.3d 324, 334, 830 N.E.2d 760 (Ill.App. 1 Dist. 2005).

The critical provision in the Purchase Agreement follows:

> 4. Adjustments. In addition to the usual and customary adjustments at Closing, the parties agree that PURCHASER shall be entitled to a credit against cash due at Closing of (A) $125,000.00 for a loan commitment fee; (B) $50,000.00 for its independent attorneys' fee and costs; and (C) $100,000.00 as a loan guaranty fee.

The Court determines this provision to be unambiguous. The Debtor clearly agreed to grant Green Lion a $275,000 reduction in the cash amount needed to close. In effect, this "adjustment" modified and reduced the stated cash to be paid to or for the benefit of the

7

Debtor from $3,739,499.88 to $3,464,499.88. This lesser amount was the total cash consideration that the Debtor was entitled to receive as a matter of the plain meaning of the Purchase Agreement. The Debtor had no contractual right to all or any portion of the $275,000 amount for which Green Lion received a credit. Those funds remained the property of Green Lion. Thus, Ridgestone was paid from funds owned by Green Lion, not by the Debtor.

The evidence in the record indicates that the contractual credit was applied at the closing as contemplated in the Purchase Agreement. The credit reduced the amount of cash required of Green Lion to close and the amount of cash actually tendered to the closing agent excluded the amount of the credit; the disbursement of those funds was processed by Ridgestone. The fact that the credit amount shown on the Settlement Statement is $276,095.89, slightly greater than the $275,000 contract amount, is not material. The larger sum was approved by the Debtor's General Manager, who signed the Settlement Statement at the closing. The slight difference in amount does not affect the determination that the Debtor acquired no property interest in the portion of the loan advanced by Ridgestone to Green Lion allocated to the Closing Credit.

The Trustee relies upon an email chain as evidence that the Closing Credit was used to pay attorney fees and other fees and interest related to Ridgestone's loan to Green Lion, which Ridgestone does not dispute. As Ridgestone points out, this fact corroborates the determination that the funds comprising the Closing Credit were used to pay obligations of Green Lion incurred under the Construction Term Loan Agreement. The Trustee contends that "these facts establish a clear link between the funds used to pay the

8

Ridgestone Fee and the funds made available to satisfy the cash purchase price of the Debtor's assets." To the contrary, these facts and all of the facts establish a clear distinction between the funds paid to or for the benefit of the Debtor, and the funds used to pay the fees and expenses related to the Ridgestone loan.

Under Illinois law, a contract must be construed as a whole, viewing each part in light of the others. *Gallagher v. Lenart,* 226 Ill.2d 208, 233, 874 N.E.2d 43 (2007). The intent of the parties is not to be gathered from detached portions of a contract or from any clause or provision standing by itself. *Id.* The Trustee ignores the fact that the Purchase Agreement expressly provides for a $275,000 credit or downward adjustment to the cash portion of the stated purchase price. It is that adjusted figure that defines the amount of cash consideration due and payable by Green Lion at closing, and that thus defines the funds that the Debtor acquired a property interest in.

Significantly, the $42,500 fee paid to Ridgestone was an obligation of Green Lion, not of the Debtor, evidenced by the Construction Term Loan Agreement between Ridgestone and Green Lion. In his Response, the Trustee asserts that the Purchase Agreement provision entitling Green Lion to a credit against cash due at closing has the effect of obligating the Debtor to pay a $125,000 fee to a lender of Green Lion's choosing. That assertion is nonsense.[2] The provision obligates the Debtor to do nothing more than accord

---

[2] Moreover, a determination that the Debtor was liable to pay the $42,500 fee would blow the constructive fraud theory out of the water. It is black letter law that a debtor's transfer of funds in satisfaction of a debt owed by the debtor is not constructively fraudulent. *See, e.g., In re R.M.L., Inc.,* 195 B.R. 602, 618 (Bankr.M.D.Pa. 1996); *In re Foos,* 188 B.R. 239, 245 (Bankr.N.D.Ill. 1995), *aff'd in part, rev'd in part on other grounds,* 1996 WL 563503 (N.D.Ill. 1996); *In re Walters,* 163 B.R. 575, 581 (Bankr.C.D.Cal. 1994); *In re Coors of North Mississippi, Inc.,* 66 B.R. 845, 862 (Bankr.N.D.Miss. 1986). Under both the federal and state statutes, "value" is defined to include satisfaction of an antecedent debt of the debtor. 11 U.S.C. § 548 (d)(2)(A); 740 ILCS 160/4(a).

a credit of $275,000 to Green Lion, thereby reducing the amount of cash needed to be tendered by Green Lion in order to satisfy its payment obligation at closing.

The obligation to pay the loan-related fees to Ridgestone and others is imposed on Green Lion in the Construction Term Loan Agreement, a contract that the Debtor is not a party to and the obligations of which were not assumed by the Debtor in the Purchase Agreement. The sole purpose for giving Green Lion a "credit" for those loan-related fees is precisely because it was Green Lion that incurred the liability and would be paying them. The Trustee concedes in his Response that the Ridgestone fee was in fact "paid" by Ridgestone debiting Green Lion's loan account and crediting its own general revenue account so that money never changed hands. No factual basis exists to support the Trustee's theory that the Debtor acquired a property interest in the funds paid to Ridgestone.

The fact that the Loan Origination Fee was an obligation of Green Lion distinguishes those cases that hold that funds paid from asset sale proceeds directly to creditors of the selling debtor are properly treated as transfers of property of the debtor. In *Warsco v. Preferred Technical Group*, 258 F.3d 557 (7th Cir. 2001), discussed at length by both parties, the court reiterated the well-established principle that indirect transfers made by third parties to a creditor of a debtor may be avoidable where property of the debtor was transferred.[3] The court reasoned that only if the funds used to pay the creditor would have been available to the debtor had they not been transferred, could the payment be said to have diminished the debtor's estate. *Id*. at 565. Here, it is clear that the funds allocated to

---

[3]To the same effect is *In re Robert,* 2007 WL 2406926 (Bankr.D.Vt. 2007), cited by the Trustee, involving an indirect transfer of proceeds from the sale of the debtor's real estate to pay a *creditor of the debtor.*

10

Green Lion's Closing Credit, treated as an adjustment that reduced the purchase price, would not have been available to the Debtor. As correctly pointed out by Ridgestone in its Reply, the credit was an entitlement not dependent upon a conforming expenditure of the funds by Green Lion. By its plain terms, the credit was absolute, unconditional and nonrefundable.

In its *Warsco* opinion, the Seventh Circuit went on to draw a distinction with those situations where two separate transactions occur, citing *In re Sneakers Sports Grill, Inc.*, 228 B.R. 795 (Bankr.M.D.Fla. 1999). The June 13, 2007, closing involved two separate transactions governed by two separate contracts: the asset purchase transaction between the Debtor and Green Lion, and the loan transaction between Green Lion and Ridgestone. The Settlement Statement is a combined closing statement for both transactions. The portion of the Settlement Statement that details the specific payments made from the $276,095.89 Closing Credit, including the Ridgestone fee, is pertinent only to the closing of the loan transaction and is immaterial to the asset purchase transaction. The $42,500 fee is referred to only in the Construction Term Loan Agreement.

There is no genuine issue of material fact and Ridgestone is entitled to judgment as a matter of law. It is not necessary to address the alternative issue raised by the parties as to whether Ridgestone was an "initial transferee" under 11 U.S.C. § 550(a)(1), which would come into play only if the transfer was held to be avoidable. The Bankruptcy Code purposefully separates the identification of avoidable transfers from the identification of those who must pay. *In re Burns,* 322 F.3d 421, 427 (6th Cir. 2003).

This Opinion constitutes this Court's findings of fact and conclusions of law in

11

accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###